CARLOTTE MOEN, Appellee, v. GEORGE FRY, Appellant.

No. 41398.

November 22, 1932.

E. R. Acres and T. H. Goheen, for appellant.

A. E. Sheridan, for appellee.

G. B. Richter, for intervener.

CLAUSSEN, J.—Carlotte Moen, when 15 years old, was employed first by Joseph Skaim, a brother-in-law, and then by defendant, another brother-in-law, in the late winter and early spring of 1928. In December of that year she gave birth to a child. Prior to the birth of the child she charged Joseph Skaim with being its father. Joseph Skaim paid complainant's father $2,000.00 in cash and gave him a note for $4,500.00, which note was sold to the father of the payee. Suit was commenced upon the note, upon Skaim's refusal to pay, and Skaim successfully defended the suit. Subsequent to

the birth of the child complainant charged defendant with being the father of the child, and on January 2, 1931, the petition herein was filed to charge defendant with the support of the child. Trial was had to a jury, which found against the defendant, and upon judgment rendered against him, he appealed to this court.

I. Over objection that the testimony was incompetent, irrelevant and immaterial, and was hearsay in that the conversation elicited was not held in the presence of defendant, the mother of complainant was permitted to relate a conversation with the complainant, which took place about two months after the baby was born, in which complainant stated that defendant was the father of the child. This testimony was clearly incompetent, and under the record was clearly prejudicial. It is suggested that this conversation was subsequently related or communicated to defendant. It nowhere appears in the record that the entire conversation was ever communicated to defendant. But even though it was communicated to defendant it would, under the facts and circumstances of this case, be incompetent.

II. It was disclosed by the testimony of a sister of complainant's that defendant occasionally sent candy bars with the sister for complainant, and that, the day after the child was born, he sent a quantity of bars, candy, and gum to complainant, with instructions that witness tell complainant that he had not forgotten her, and that she would get the biggest present she ever got. Over objection that the questions called for things said and done when defendant was not present, complainant was permitted to prove what was said at the time of the delivery of the candy. It was probably proper to show that the candy and message were delivered, but the circumstances other than the fact that the candy and message were delivered were clearly subject to the objection made. The case would not be reversed on this error alone.

III. In view of the fact that complainant worked for Joseph Skaim shortly before she began working for defendant and the further fact that complainant had charged Skaim with being the father of the child, it became important to fix the date when she started working for defendant. Certainly complainant became pregnant at about the time of the change of employment. Complainant's witnesses fixed the date when she went to defendant's place by referring to a sale. For the purpose of showing the date of the sale, much testimony was taken tending to show the publication of notice

of the sale and also showing the contents of the published notice. There was testimony showing the sale was held on the date given in the published notice. There was but little justification for the minuteness of detail with which the publication of the notice was proved. But under all the facts and circumstances there was no error in admitting the notice and proof of its publication. Neither was there error in permitting witnesses to fix the time by reference to the date of the sale.

IV. The fifteenth assignment of error finds no support in the record. The matters complained of did not take place in the trial now under consideration. Neither the abstract nor the transcript contains the matters complained of. The statements of the amendment to abstract are denied by appellee and are not sustained by the transcript.

V. As hereinbefore stated complainant charged one **Skaim** with being the father of her unborn child. Her father secured $2,000.00 and a note for $4,500.00 from Skaim, by reason of such accusation. The note was sold, and when suit was brought to collect it Skaim successfully defended the suit. One of appellant's attorneys represented Skaim in the suit. Upon the trial of this case it was developed that complainant had accused Skaim, as aforesaid, and that Skaim had paid $2,000.00 and given the note. Thereupon, over strenuous objection, the note, the pleadings on the note, and judgment entry in the suit, and the fact that defendant's counsel had represented Skaim, were introduced in evidence and proved. Some of the objections made were inadequate but on the whole, at some place in the process of introducing and proving these items tenable objection was made. Even a casual study of the problem reveals that the only evidentiary fact involved in this whole mass of evidence was the statement of complainant that Skaim was the father of the child. That was inconsistent with her statement that defendant was the father. It was entirely immaterial that Skaim was willing to disgorge $6,500.00 when the charge was made, or that after publicity, he recanted his early generosity. The details of the pleadings and proceedings in the suit on the note could shed no light on the question whether defendant was the father of the child. The admission of this mass of testimony was erroneous and prejudicial.

It cannot be said that appellant opened the door to let in this mass of immaterial matter. Upon a former trial of the cause, complainant's father testified as a witness in her behalf. Upon this

trial his testimony in the former trial was read into the record by defendant. In this manner defendant read into the record in this case the following testimony, from cross-examination in the former trial:

"I told George Fry it was Joseph Skaim. I told him when he asked me. This Joseph Skaim is my son-in-law. The next morning I went to Jake Nelson's and sent for Joseph Skaim, my son-in-law, and I got four packages of $500 each, it was laid on Nelson's table. I know Mr. Lynch picked up $500 and I know that Jake Nelson picked up $500 and I didn't get no $1500, I got $1000. Then I got the note and I afterwards sold that note to my father for $2400 in cash and for the debts I owed him."

We need not determine whether this testimony warranted complainant in entering the field of the settlement between her father and Skaim, for it is obvious that it did not open the door for a detailed investigation of the remotest ramification of the transaction, such as was undertaken, and made a part of this case.

 VI. Complaint is made by appellant of the refusal of the trial court to permit witnesses to answer questions concerning the general reputation of defendant for chastity and decency, virtue and decency, and for moral character, virtue and decency. It is not now suggested or decided that a defendant may sustain his case by proof of character, or reputation for character, concerning the traits involved in the charge. It is only necessary to call attention to the fact that, even in cases where the defendant may do so, he is always limited to the traits involved in the charge. The questions were too broad in that they involved decency, which is almost generic in its scope.

 VII. The pastor of the church with which complainant's family was affiliated was called as a witness for defendant. He testified that he baptized the baby and that at the time he did so complainant told him Joseph Skaim was the father of the child, and that he had made a memorandum of the circumstances, which he produced, and which was introduced in evidence. The memorandum is not English writing and its translation is not in the record. Starting with these facts, complainant was permitted on cross-examination to show, over objection, that subsequent to the baptism, Joseph Skaim came to the witness and said he was not the father of the child and wanted his name taken from the record, and

that the witness had told these things to complainant's father. The fact having value as evidence was that complainant stated to the minister that Joseph Skaim was the father of the child. That statement was not consistent with her present claim or with her testimony. The memorandum made by the pastor, if it is what he said it was, had no value, and would be neither competent nor relevant to prove any fact except that the pastor had correctly related the conversation with complainant concerning the paternity of the child. We do not hold that it is competent or relevant evidence for that purpose. That question is not in the case. But assuredly it could be neither competent nor relevant for any other purpose. Upon cross-examination it was improper, under the record, to develop the subsequent conversations between the pastor and Joseph Skaim and complainant's father.

█ VIII. Complainant testified that defendant, when advised of her condition, said among other things, "I should go over to Aunt Ida's and get a box over there that would relieve me from getting a baby." The record leaves this box a thing of mystery. But upon cross-examination of Aunt Ida complainant developed that the prescription for the contents of the box had been obtained many years before from a doctor, who had since died, and had been filled by a druggist at Decorah. Starting from this testimony elicited upon cross-examination of defendant's witness, complainant, upon rebuttal, read the testimony of the Decorah druggist, taken at the former trial, the burden of which was that he could find no prescription in the files of the drug store written by the deceased physician for Aunt Ida, and from which it appears that the druggist had recently inherited the drug business from his brother. The record is so ambiguous, on account of the testimony read from the transcript of a former trial, that no certainty exists as to whether objections shown were made in this trial or in the former trial. In view of the possibility of a retrial of the case, it is perhaps proper to suggest that the whole mass of the druggist's testimony is so remote from any issue on trial, and is so obviously incompetent and unsatisfactory, that it should be excluded, unless a much different situation is developed in such trial, and the character and completeness of the files are established by much more satisfactory testimony. Even assuming that it was competent to prove that the original contents of the box were intended to produce an abortion, it is manifest that complainant is not entitled to pursue the collateral

issue developed on cross-examination as to whether Aunt Ida secured the original box or any refill from the Decorah druggist.

IX. In view of the instructions given, there was no error in the refusal of the court to give the instructions requested by the defendant. We find no error in instructions which we are at liberty to review under the record.

Thirty-seven errors are assigned by appellant. Many of the paragraphs of this opinion dispose of several assigned errors. The foregoing discussion disposes of all having merit, as well as such as are likely to arise upon a retrial of the case.

For reasons hereinbefore set forth the judgment of the trial court is reversed.—Reversed.

STEVENS, C. J., and EVANS, ALBERT, KINDIG, and BLISS, JJ., concur.